# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| H. RAY SHOUSE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | 5:05-CV-314 (DF) |
| | : | |
| INVESTIGATOR MARTIN URSITTI; SHERIFF JOHN CARY BITTICK; CAPTAIN BENSON, DEPUTY GRINDSTAFF; INVESTIGATOR MICHAEL OGLETREE; DEPUTY DUNCAN; and DEPUTY JOHNNY EVANS, | : | |
| | : | |
| Defendants. | : | |

## **O R D E R**

Plaintiff H. Ray Shouse, proceeding *pro se*, filed suit against the above-named defendants, each of whom is employed by the Monroe County, Georgia, Sheriff's Department, under 42 U.S.C.A. § 1983, alleging violations of the Fourth Amendment and of the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Currently pending before the Court is a motion for summary judgment (doc. 35) filed on behalf of all defendants.[1] For the following reasons, defendants' motion is **GRANTED.**

---

[1] In his complaint, Shouse also named as defendants (1) Monroe County, (2) Monroe County Board of Commissioner's Office, (3) Monroe County Sheriff's Department, and (4) the above-named individuals in their official capacities. Those parties were dismissed on November 7, 2005 (doc. 34).

## I.  BACKGROUND

In early October 2004, Investigator Martin Ursitti received word from Chief Deputy Johnny Wilkes that numerous teenage boys were frequenting a motor home located at L&D RV Park on Dames Ferry Road in Monroe County.  Wilkes had been contacted with this information by a concerned local citizen.  The same concerned citizen had also informed Wilkes that the resident of the motor home, Ray Shouse, was offering to pay the teenagers fifty dollars each to fill out job applications and that, if he decided to hire them, the boys could work for him as a private investigator, making up to $5,000 for helping conduct an investigation in Tennessee.

After receiving this information from Wilkes, Ursitti learned from one of his fellow investigators, Beverly Aldridge, that Shouse was a convicted violent sex offender who had failed to register in Monroe County, as required by law.  Ursitti knew Shouse and knew that he lived on Dames Ferry Road in Monroe County. Based on this information, Urisitti conducted surveillance on Shouse's home at L&D RV Park for several months, but did not observe any unusual activity.

Ursitti discussed the situation with an assistant district attorney, and the two decided that Ursitti should visit Shouse's residence to see if he could observe any illegal activity.  On the pretense of being interested in buying Shouse's truck, Ursitti traveled to Shouse's home several times, but did not observe any unlawful activity.

On November 18, 2004, Shouse was arrested for failing to register with the county as a convicted sex offender. He was released on bond the same day.

In April 2005, Ursitti received several telephone calls from a woman named Gail Noyes, who claimed that she had been defrauded by Shouse out of several thousand dollars for unperformed legal services he had promised to provide her.[2] As collateral for money Noyes owed Shouse, Shouse had taken possession of Noyes's Ford Ranger pickup truck and a Virago motorcycle that belonged to Brent Ulman, a long-haul trucker.[3] When Noyes and Ulman returned to Georgia from an out-of-town trip, they met with Ursitti and a local assistant district attorney to discuss their allegations against Shouse. Noyes and Ulman were directed to contact the authorities in Butts County, Georgia, where the underlying transactions occurred.

On April 13, Shouse called the Monroe County Sheriff's Department and requested that a drug investigator be sent to his home to search the bedroom of his roommate, Christopher Stowe, for marijuana. Ursitti, along with Investigator Ogletree and Officer Duncan, went to Shouse's home and found Stowe standing in the front yard. Stowe told the officers he was in the process of moving out and that he was waiting for his ride to come pick him up. The officers obtained Stowe's

---

[2] It is not clear why Noyes hired Shouse, a non-lawyer, to perform legal services.

[3] The relationship between Noyes and Ulman is unknown to the Court.

verbal consent to search his room, where his belongings were still located. Shouse was in the residence when the officers conducted the search. The officers found no evidence of marijuana in Stowe's room or in his belongings. Shouse then pointed the officers to a bag of camping gear that had already been searched. After checking the bag again, the officers found a trace of marijuana so negligible that it had been overlooked the first time around. The officers did not arrest Stowe for marijuana possession because the amount was so small and because they suspected Shouse of having planted it in Stowe's bag.

A couple of weeks later, on April 26, Noyes contacted the Monroe County Sheriff's Office and, when Ursitti returned her call, she informed him that Shouse had an outstanding arrest warrant for his failure to appear in court. Ursitti verified the existence of Shouse's outstanding warrant. Noyes called the sheriff's office several times the following day, asking Ursitti whether the warrant would be served on Shouse and, if so, whether it would be okay if Stowe picked up her truck and Ulman's motorcycle. Ursitti told her that because Shouse had a bill of sale for the motorcycle Ulman should seek a civil remedy for its recovery. Ursitti promised Noyes that he would check to see if Shouse would permit the release the pickup truck, and Noyes agreed to allow Stowe to pick it up on her behalf in the event that Shouse consented to its release.

Ursitti and Deputy Ronnie Evans served the outstanding arrest warrant on Shouse the following day, April 27. On the way to serve the warrant, Ursitti spotted Stowe at a local grocery store and picked him up. Ursitti dropped Stowe off at the end of Shouse's driveway and told him to stay there. The officers arrested Shouse at 4:00 p.m. After Ursitti told Shouse that Noyes had requested her truck back, Shouse asked where Stowe was. Ursitti told Shouse that Stowe was at the end of the driveway. Shouse informed Ursitti that Noyes could have her truck back, along with certain cushions and chairs that belonged to her, but said that he did not want Stowe coming onto his property or near the truck (which appeared to be on the property).

During this same exchange, Shouse told the officers that he had a bill of sale for the motorcycle. Ursitti assured Shouse, as he had Noyes, that the ownership of the motorcycle was a civil matter. Before he was taken into custody, Shouse asked the officers to make sure his house was locked. They did so in his presence. Evans drove Shouse to the Monroe County jail in his own patrol car, while Ursitti departed separately, stopping at the end of the driveway to warn Stowe that Shouse did not want him to go onto the property or near Noyes's truck.

Sometime between 3:00 p.m. and 5:00 p.m., Hugh Williams arrived at Shouse's motor home. Williams, one of Shouse's acquaintances, did not know at the time that Shouse had been arrested. Williams witnessed Stowe "loading up Mr. Shouse's

motor cycle and the big go-cart belonging to Mr. Shouse." Williams Decl. at 2, Ex. A-3 to doc. 50. According to Williams, Ursitti and another unidentified deputy sheriff were on the premises as Stowe loaded up the motorcycle and go-cart.[4] *Id.* Williams states that Ursitti appeared to be "conspiring with Mr. Stowe to steal from Mr. Shouse." *Id.*

Shouse returned home from jail on May 3 to find that the Virago motorcyle, a go-cart, and a go-cart seat were missing. He contacted the sheriff's department to report his missing property and to report his suspicions that Ursitti and other officers were complicit in the theft. Captain Tom Benson determined that Shouse's

---

[4] The facts are in dispute on this point: Contradicting Williams's recollection, Ursitti states in his affidavit that, during the time while he was at Shouse's home on April 27, no one else besides Evans and Shouse were present—not even Williams. Ursitti Aff. at 5, Ex. to doc. 35. Ursitti further states that, on either April 28 or 29, 2005, he drove by Shouse's residence and observed that Shouse's vehicle, Noyes's truck, and the motorcycle were still parked in the same places they were when Shouse was taken to jail the day before. *Id.* From what Ursitti could tell, the residence also appeared to be secure. *Id.* Because the Court must view the record in the light most favorable to the non-moving party, it must accept Williams's characterization of the facts over Ursitti's for purposes of adjudicating defendants' motion for summary judgment.

Defendants acknowledge Williams's characterization, but argue that his "affidavit"—which is really an unsworn declaration—is void as a matter of law and should not be considered by the Court because it does not contain a proper notarial seal. *See* O.C.G.A. § 45-17-6 (Lexis 2002); **Hurt v. Norwest Mortgage, Inc.**, 580 S.E.2d 580, 583 (Ga. Ct. App. 2003). Defendants' argument, sound as a general proposition, overlooks the fact that, in federal proceedings, such unsworn declarations may be used to support or oppose a motion for summary judgment and operate in the same manner as traditional, notarized affidavits, with "like force and effect." *See* 18 U.S.C.A. § 1746 (West 2005); *see also* **Henderson v. Inter-Chem Coal Co., Inc.**, 41 F.3d 567, 570 n.1 (10th Cir. 1994); **In re Muscatell**, 106 B.R. 307, 308 (Bankr. M.D. Fla. 1989) (citing **Carter v. Clark**, 616 F.2d 228, 230 (5th Cir. 1980)). Williams's declaration (and the others submitted by Shouse, with the exception of Joseph McDade's) satisfies the requirements of 28 U.S.C.A. § 1746 because it is in writing and subscribed by him as true under penalty of perjury.

allegations were groundless and did not conduct an investigation. Accordingly, he did not prepare an incident report documenting Shouse's complaint.

Shouse filed this lawsuit on September 1, 2005, alleging that Ursitti and other members of the Monroe County Sheriff's Department violated various of his Fourth and Fourteenth Amendment rights. Specifically, he alleges that: (1) Ursitti, Evans, and Bittick[5] stole his motorcycle, go-cart, and go-cart seat, in violation of Shouse's due process and equal protection rights, and his Fourth Amendment right to be free from unreasonable seizures; (2) the officers' failure to arrest Stowe for marijuana possession violated Shouse's due process and equal protection rights; (3) Benson's failure to prepare an incident report in connection with Shouse's theft allegations violated Shouse's due process and equal protection rights; (4) Ursitti's surveillance of his property "without probable cause" violated his due process rights; (5) Ursitti told two men, Kevin Tucker and Michael Masterman, that Shouse was a convicted child molester, thereby violating Shouse's due process and equal protection rights.

---

[5] The Court will assume that Bittick is the unidentified official referred to in Williams's declaration.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986). A genuine issue of material fact necessary to defeat a properly supported motion for summary judgment arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986). The Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but may not make credibility determinations or weigh the evidence. *Id.* at 249. Finally, "the evidence presented cannot consist of conclusory allegations or legal conclusions." **Avirgan v. Hull**, 932 F.2d 1572, 1577 (11th Cir. 1991).

## III. DISCUSSION

A.   **Equal Protection Clause**

Shouse argues that his equal protection rights were violated in four specific instances: (1) when his personal property was stolen; (2) when his roommate was not charged with marijuana possession; (3) when Captain Benson did not prepare an incident report; and (4) when Ursitti told two individuals that Shouse was a child

molester. Shouse's equal protection claims are without merit.

To be cognizable, a claim under the Equal Protection Clause of the Fourteenth Amendment must allege "that through state action, similarly situated persons have been treated disparately." **Thigpen v. Bibb County**, 223 F.3d 1231, 1237 (11th Cir. 2000), *abrogated on other grounds by* **Nat'l R.R. Passenger Corp. v. Morgan**, 536 U.S. 101 (2002). Disparate treatment is sufficient to ground an equal protection claim only if it is the result of intentional discrimination, which the Supreme Court has identified as "the critical inquiry for ascertaining violations of the Equal Protection Clause." **Missouri v. Jenkins**, 515 U.S. 70, 121 (1995). Shouse has not alleged, and has not produced any evidence to support a finding, that he was disparately treated vis-à-vis any similarly situated person—much less that he was disparately treated as a result of intentional discrimination. His equal protection claims must therefore fail.

**B.   Due Process Clause**

Shouse argues that his due process rights were violated in five specific instances: (1) when his personal property was stolen; (2) when Captain Benson did not prepare an incident report; (3) when Ursitti told two individuals that Shouse was a child molester; (4) when Ursitti surveilled his home without probable cause; (5) when Stowe was not arrested for possessing a trace amount of marijuana. The Court

construes Shouse's first claim as one invoking the Due Process Clause's procedural, rather than substantive, protection. The Court construes his second and third claims as invoking the Clause's substantive, rather than procedural, protection. The Court construes his fourth claim as implicating the Fourth Amendment, not the Fourteenth.[6] Finally, the Court construes Shouse's fifth claim as implicating no legally protected right at all.

### 1. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment provides that "[n]o person shall . . . be deprived of . . . property [ ] without due process of law." U.S. Const. amend XIV. With regard to the Clause's procedural aspect, as a general rule, "individuals must receive notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48 (1993). But in a property-deprivation case like this one, where the Due Process claim "involv[es] a tortious loss of a [plaintiff's] property as a result of a random and unauthorized act by a state employee," the general rule does not apply. *See* *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled in part by* *Daniels v. Williams*, 474 U.S. 327 (1986) (requiring more-than-negligent conduct to trigger procedural due process safeguards); *see also* *Hudson v. Palmer*, 468 U.S.

---

[6] This claim is thus discussed separately from the Due Process claims.

517, 533 (1984) (extending *Parratt*'s post-deprivation, adequate-state-remedy rule to intentional torts). Instead, in a case involving a claim like the one Shouse has alleged, a pre-deprivation hearing is not constitutionally required in order to satisfy the demands of due process so long as the state has in place an adequate post-deprivation procedure, whereby the plaintiff can seek redress for his alleged injury—e.g., a state-law tort action against the appropriate state official. *See Parratt*, 451 U.S. at 543; *Hudson*, 468 U.S. at 533.

Like the claim at issue in *Parratt*, Shouse's claim satisfies three of the prerequisites of a valid due process claim: (1) defendants, at all relevant times, acted under color of state law; (2) Shouse's motorcycle, go-cart, and go-cart seat are property covered by the Clause; and (3) the alleged theft amounted to a deprivation.[7] "Standing alone, however, these three elements do not establish a violation of the Fourteenth Amendment." *Parratt*, 451 U.S. at 537. This is because "[t]he Fourteenth

---

[7] As did the Supreme Court in *Parratt*, 451 U.S. at 537 n.3, this Court assumes, without deciding, that Shouse could prove a causal link between the taking of his personal property and some more-than-negligent action—say, for instance, deliberate indifference to Shouse's property rights—on the part of at least one of the named defendants. *See Daniel*, 474 U.S. at 330-31. The Court need not decide this question because, even if Shouse could prove that the deprivation was caused by some wilful act of one or more of the defendants, his due process claim would still fail because the State of Georgia, as discussed in the text, has not denied him "due process of law." Alternatively, were the Court to conclude that the evidence Shouse has adduced demonstrates only a negligent action on behalf of the defendants, he would not have a cause of action under the Due Process Clause because negligent conduct cannot give rise to a "deprivation" for purposes of the Fourteenth Amendment. *Id.*

Amendment protects only against deprivations 'without due process of law.'" *Id.*

Here, Georgia's obligation to provide Shouse with due process of law is satisfied by the remedy it provides to persons "who believe they have suffered a tortious loss at the hands of the state." *Id.* at 543. *See* **Cameron v. Lang**, 549 S.E.2d 341, 344 (Ga. 2001) ("Under Georgia law, a public officer or employee may be personally liable . . for . . . acts performed with malice or an intent to injure."); *see also* **Gilbert v. Richardson**, 452 S.E.2d 476, 482 (Ga. 1994) ("[A] public officer or employee . . . may not be held liable for his discretionary acts unless such acts are willful, wanton, or outside the scope of his authority.").

If, as Shouse alleges, and as the Court assumes to be true for purposes of this motion, Ursitti and another county official actively participated in the theft of Shouse's motorcycle, go-cart, and go-cart seat, then Shouse would be free to pursue a tort cause of action against those public officials under Georgia law. Consequently, his allegations do not state a claim for relief under the Due Process Clause. As Justice Stevens wrote while still a judge on the United States Court of Appeals for the Seventh Circuit, in a statement later cited with approval by his Supreme Court colleagues in *Parratt*:

> We may reasonably conclude, therefore, that the existence of a state remedy to redress property damage inflicted by state officers avoids the conclusion that there has been any constitutional deprivation of property

without due process of law within the meaning of the Fourteenth Amendment.

***Bonner v. Coughlin***, 517 F.2d 1311, 1319 (7th Cir. 1975), *modified en banc*, 545 F.2d 565 (1976). Because Shouse has an adequate state remedy for the deprivation he alleges in this case, the Court hereby grants summary judgment in favor of defendants insofar as Shouse's due process claim relates to the alleged theft of his property.

    **2.**     **Substantive Due Process**

The Fourteenth Amendment's Due Process Clause "'guarantees more than fair process.'" ***Troxel v. Granville***, 530 U.S. 57, 65 (2000) (quoting ***Washington v. Glucksberg***, 521 U.S. 702, 719 (1997)). "The Clause also includes a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests." ***Id.*** (internal quotation marks omitted). "This substantive component protects fundamental rights that are so 'implicit in the concept of ordered liberty' that 'neither liberty nor justice would exist if they were sacrificed.'" ***Doe v. Moore***, 410 F.3d 1337, 1343 (11th Cir. 2005). These rights are "protected from certain state actions regardless of the procedures the state uses." ***Id.***

In analyzing a substantive due process claim, the Court must first identify

the asserted right and then determine whether that right has been recognized as fundamental or whether there is historical evidence that would support such a recognition. *Id.* As best the Court can determine, Shouse alleges the violation of two rights he contends are guaranteed him by the Due Process Clause: (1) the right to have an incident report prepared for every allegation of criminal conduct reported to law enforcement authorities, and (2) the right to prevent law enforcement officials from disclosing to third parties one's status as a convicted sex offender.[8] Neither of these asserted rights is fundamental for purposes of the Due Process Clause. *See, e.g., Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) ("Nondisclosure of one's criminal record is not one of those personal rights that is 'fundamental' or 'implicit in the concept of ordered liberty.'"). The Court therefore grants summary judgment in favor of defendants on these due process claims, as they are without merit.

## C.     Fourth Amendment

Shouse makes two allegations that the Court views as implicating the Fourth Amendment. First, he argues that his motorcycle, go-cart, and go-cart seat were unlawfully seized from his property without a search warrant. Second, he argues that

---

[8] Other than the bald allegation in Shouse's complaint, there is no evidence that Ursitti told anyone about Shouse's status as a convicted sex offender. Ursitti denied having done so in his affidavit, *see* Ursitti Aff. ¶13, Ex. 5 to Defs.' Mot. Summ. J., doc. 35, and Shouse has produced no evidence to support his allegation. Thus, even if such conduct could give rise to a substantive due process claim, Ursitti would be entitled to summary judgment based on the lack of evidentiary support for the allegation.

Ursitti visually surveilled his house without probable cause to believe that Shouse or anyone at his residence was engaged in criminal activity. The Court will address these arguments in turn.

### 1. Seizure of Shouse's Personal Property

Other than his conclusory speculation, which is in itself insufficient to defeat defendants' summary-judgment motion, the only evidence Shouse has produced to substantiate his claim that his property was "seized" at all is a declaration of Hugh Williams, who stated that on April 27 "Mr. Thomas Stowe was loading up Mr. Shouse's motor cycle and the big go-cart belonging to Mr. Shouse" and that "Mr. Martin Ursitti [was] there with Mr. Stowe." Williams Decl. at 2, Ex. A-3 to doc. 50.

The Fourth Amendment prohibits the *government* from subjecting individuals to unreasonable searches or seizures. U.S. Const. amend. IV. The protections of the Fourth Amendment do not reach purely "private" searches or seizures. *See* **Skinner v. Railway Labor Executives' Ass'n**, 489 U.S. 602, 614 (1989). Only if the private party "acted as an instrument or agent of the Government" will the Fourth Amendment's protections be implicated. *Id.* "For a private person to be considered an agent of the government, [the Eleventh Circuit] looks[s] to two critical factors: (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather

than to further his own ends." ***United States v. Steiger***, 318 F.3d 1039, 1045 (11th Cir. 2003).

Assuming that Ursitti knew of and acquiesced in Stowe's unauthorized removal of Shouse's motorcycle, go-cart, and go-cart seat, Shouse has failed to produce any evidence to support a finding in his favor on the second factor. That is, he has presented no evidence from which a reasonable juror could conclude that Stowe's purpose in taking the property was to assist law enforcement efforts. For all anyone knows, Stowe took Shouse's motorcycle, go-cart, and go-cart seat because he wanted them for his own use. Because there has been no evidence presented in this case regarding Stowe's motive or intent in taking Shouse's property, assuming that he did in fact take the property as Williams described, there is no way to tell whether Stowe was acting with the intent to assist the efforts of law enforcement[9] or whether he was acting in furtherance of his own ends. *See* ***Steiger***, 318 F.3d at 1045.

In the absence of such evidence, Shouse has failed to create a genuine issue of material fact on the question whether Stowe can be considered an agent or instrument of the government and thus whether a seizure occurred for purposes of the Fourth Amendment—a question on which he would bear the burden of proof at trial. Accordingly, so far as Shouse's Fourth Amendment claim relates to the removal of

---

[9] It is not clear what those efforts might have been.

his personal property by Stowe on April 27, defendants are entitled to and are granted summary judgment.

### 2. Naked-Eye Surveillance of Shouse's Home

With respect to Shouse's second argument, that Ursitti visually surveilled his home without probable cause to suspect criminal activity, he has not stated a colorable claim under the Fourth Amendment because the naked-eye, visual surveillance that Ursitti conducted was neither a search nor a seizure for purposes of the Amendment. *See* **Kyllo v. United States**, 533 U.S. 27, 32 (2001) (recognizing that, despite fundamental reorientation of Fourth Amendment jurisprudence, "the lawfulness of warrantless visual surveillance of a home has still been preserved" and noting that "visual observation is no 'search' at all"); *see also* **California v. Ciraolo**, 476 U.S. 207, 213 (1986).

Because Shouse cannot demonstrate that Stowe—the only individual linked by any evidence (Williams's declaration) to the physical removal of Shouse's property—"seized" his property while acting as an agent or instrument of the government, and because Ursitti's visual surveillance of his home was not a search or seizure, Shouse has failed to create a genuine issue of material fact on his Fourth Amendment claims. The Court therefore grants summary judgment in favor of defendants.

## IV.  CONCLUSION

For the reasons stated above, Shouse has failed to create a genuine issue of material fact on any of his constitutional claims, and defendants are entitled to judgment as a matter of law on all of them.  Accordingly, defendants' motion for summary judgment is hereby **GRANTED.**

SO ORDERED, this 23rd day of May, 2006.

/s/ **Duross Fitzpatrick**
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/sew